

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00245-CV

OLYMPIA GUNN, APPELLANT

V.

BAPTIST/ST. ANTHONY'S HEALTH NETWORK, APPELLEE

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 96,367-C, Honorable Ana Estevez, Presiding

May 31, 2013

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

After she was injured on the job, appellant Olympia Gunn signed a waiver subject to Texas Labor Code § 406.033.[1]  When she later sued her employer, the trial court granted a summary take-nothing judgment in favor of the employer.  She appeals.  We will affirm.

---

[1] Texas Labor Code Ann. § 406.033 (West 2011).

## Background

Gunn began work as an overnight nurse at Baptist St. Anthony's Health Network ("BSA") in May 2004. BSA does not carry worker's compensation coverage; employees injured on the job are covered by a "voluntary employee injury program."

Gunn's pleadings asserted her neck and shoulder were injured in February 2006. She testified on deposition that she was injured when a patient became combative after she removed some restraints during nursing care. Gunn testified that as she put clean sheets underneath the patient, he "shoved my head down," and she "heard my neck pop." The patient had a contagious herpes infection, and Gunn was dealing with him alone because the nurse trainee working with her refused to assist her. Gunn asked her supervisor for additional help but was told "we are shorthanded, do the best you can, there's nobody I can send you."

Gunn's injury occurred during the shift that ended at 7:00 in the morning on February 4, a Saturday. She returned to begin another shift at 7:00 p.m. that same day, and reported her injury to her supervisor at that time. She also completed, on the same day, a written report describing her injury. She testified, "[T]hat's when I filled out the incident report and told them how bad I was hurting."

Beverly Lewis is the employee health manager for BSA. Her office is open only on weekdays. She testified, in her deposition, BSA policy requires work-related injuries occurring after hours or on weekends to be reported to the supervisor. Her office would have received notice of Gunn's injury no earlier than the Monday following the injury.

2

On February 16, 2006, Gunn was examined by Dr. Neil Veggeberg, a nonemergency room physician. The next day, February 17, she signed BSA's Occupational Injury Benefit Program Acceptance and Waiver, with Lewis as a witness. The one-page document included the following paragraph:

> WAIVER: In exchange for my enrollment and election to participate in the program: I HEREBY VOLUNTARILY RELEASE, WAIVE, AND FOREVER GIVE UP ALL MY RIGHTS, CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING OR ARISING IN THE FUTURE THAT I MAY HAVE AGAINST [BSA] THAT ARISE OUT OF OR ARE IN ANY WAY RELATED TO INJURIES (INCLUDING A SUBSEQUENT OR RESULTING DEATH) THAT I HAVE SUSTAINED IN THE COURSE AND SCOPE OF MY EMPLOYMENT WITH BSA. I EXPRESSLY UNDERSTAND THAT INCLUDED IN THE CLAIMS THAT I AM RELEASING, WAIVING, AND GIVING UP ARE CLAIMS BASED ON NEGLIGENT OR GROSSLY NEGLIGENT ACTS OR OMISSIONS. BY ELECTING TO ENROLL AND PARTICIPATE IN THE PROGRAM, I FULLY UNDERSTAND AND AGREE THAT ANY BENEFITS PAYABLE UNDER THE PROGRAM SHALL BE THE SOLE AND EXCLUSIVE REMEDY FOR ME. CONTESTS CONCERNING MY BENEFITS WILL BE RESOLVED THROUGH THE PROGRAM'S DISPUTE RESOLUTION PROCEDURES.

The document also included a paragraph providing:

> ACKNOWLEDGEMENTS: I acknowledge that I have carefully read this Acceptance and Waiver. I further acknowledge that I understand and accept the terms of this Acceptance and Waiver and agree to be bound by the terms and conditions of the Program. No one has forced me to sign this Waiver. No representations have been made to induce me to sign this Waiver other than those consistent with the terms of this Program.

BSA's injury benefit program did not provide "subscriber-level" benefits. But, under the program, for a period of two years, BSA paid Gunn's medical expenses, including those for occupational and physical therapy, injections and other medications for pain, neck fusion surgery, and an additional surgery on her brachial plexus. Pursuant to the program, BSA also paid Gunn wage replacement benefits biweekly for a total of 110 weeks. At the time of her deposition, however, she stated she was "pretty

much in bed 80 percent of the time." In 2008, Gunn was also informed she "could no longer work for BSA due to [her] conditions."

Gunn subsequently sued BSA, asserting causes of action for negligence and gross negligence. BSA moved for summary judgment, asserting theories of waiver, ratification and election of remedies and an absence of duty. The trial court granted the motion without specifying the ground it accepted.

Analysis

Through one issue, Gunn argues BSA failed to satisfy its evidentiary burden to be entitled to summary judgment. BSA asserts the summary judgment evidence conclusively establishes its affirmative defense of waiver.

Standard of Review and Applicable Law

We conduct a *de novo* review of the trial court's decision to grant a traditional motion for summary judgment. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* To sustain the granting of a traditional summary judgment motion, we must find that the movant has met its burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997).

Application

The parties' arguments on appeal focus on the requirements of Labor Code § 406.033(f) and (g). There is no dispute Gunn signed BSA's document containing the post-injury waiver. Section 406.033(f) provides that a cause of action may not be waived by an employee after the employee's injury unless:

(1)     The employee voluntarily enters into the waiver with knowledge of the waiver's effect;

(2)     The waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;

(3)     The employee, before signing the waiver, has received a medical evaluation from a non-emergency care doctor; and

(4)     The waiver is in a writing under which the true intent of the parties is specifically stated in the document.

Gunn contends the summary judgment evidence leaves fact issues as to subparagraphs (1), (2) and (3) of § 406.033(f). She also argues the waiver fails to comply with the requirement of § 406.033(g) that a waiver be conspicuous.

Knowledge of Waiver's Effect

Gunn first argues the summary judgment evidence does not conclusively establish she voluntarily signed the waiver with knowledge of its effect, as required by § 406.033(f)(1).

The Tyler Court of Appeals addressed § 406.033(f)(1) in *Lopez v. Garbage Man, Inc.,* No. 12-08-00384-CV, 2011 Tex.App. LEXIS 2342 (Tex.App.—Tyler March 31, 2011, no pet.) (released for publication). Specifically addressing the "knowledge of its effect" requirement of § 406.033(f)(1), the court applied the presumption that one "who

5

signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract." *Id.* at *21. Thus, absent evidence of "trick or artifice," the signer is presumed as a matter of law to have read and understood the contract. *Id.* at *22 (*citing Tamez v. SW Motor Transp. Inc.,* 155 S.W.3d 564, 570 (Tex.App.—San Antonio, no pet.)); *see Hernandez v. Lasko Prods.*, No. 3:11-CV-1967-M, 2012 U.S. Dist. LEXIS 144338 (N.D. Tex. Oct. 5, 2012) (applying *Lopez*).[2] We will apply *Lopez's* analysis in this case.[3]

Gunn points to her testimony she did not remember signing the waiver. She also testified to documents she signed at Veggeberg's office prior to his examination of her on February 16. After review of the entire summary judgment record, we conclude there is not a genuine issue that Gunn signed the waiver on February 17, with Lewis as the witness. Gunn testified to her signature on the document containing the waiver. That, at the time of her deposition, she did not remember signing the document does not provide evidence she lacked knowledge of the waiver's effect when she signed it. Nor can we agree that Lewis's deposition testimony she did not explain the waiver to Gunn raises a fact issue as to Gunn's knowledge of its effect.

The federal district court in *Blackshire v. Tyson Foods, Inc.,* 2010 U.S. Dist. LEXIS 84237 at *22, found the summary judgment evidence there raised a fact issue

---

[2] Both *Lopez,* 2011 Tex.App. LEXIS 2342, at *2, and *Hernandez,* 2012 U.S. Dist. LEXIS 144338, at *8, involve employees who primarily spoke Spanish. All of the evidence here reflects Gunn is an English speaker.

[3] *But see Blackshire v. Tyson Foods, Inc.,* No. 2:09-CV-329-TJW, 2010 U.S. Dist. LEXIS 84237 (E.D. Tex. Aug. 17, 2010) (noting no Texas court then had addressed the scope of the language of § 406.033(f), and finding the statute supersedes the common law presumption).

regarding whether the employee, who admittedly signed a waiver, voluntarily did so with knowledge of its effect. The record in *Blackshire* included evidence not present here, including evidence the employee did not have the opportunity to read the document in its entirety before signing it, evidence he told the employer he did not understand the waiver, and evidence raising questions concerning the voluntariness of his signing.

Based on our review of the summary judgment record, we find no genuine issue of material fact is raised with regard to compliance with § 406.033(f)(1).

Tenth Business Day

Gunn next argues BSA did not conclusively show the waiver was entered into at least ten business days from the date of the initial report of injury, as required by § 406.033(f)(2). She sees an ambiguity in the summary judgment evidence regarding the initial report of her injury. As noted, the summary judgment evidence shows Gunn informed her supervisor of her injury and completed a written report on February 4, but the injury was not, as Gunn's brief describes it, "reported to the office which handles the claim" until the next Monday, February 6. Gunn signed the waiver on February 17.

Applying the plain language of § 406.033(f)(2),[4] we agree with BSA that the undisputed evidence Gunn made both an oral and written report of her injury on February 4, a Saturday, and signed the waiver on February 17, establishes as a matter of law the waiver was entered into not earlier than the tenth business day after the date of the initial report of injury.

---

[4] *See State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (construction of statute begins with "plain and common meaning of the statute's words" (*quoting Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999)).

Medical Evaluation

As noted, in her deposition testimony Gunn made reference to documents she signed before she was seen by Veggeberg, a nonemergency care physician. She argues her testimony raises an issue of fact concerning compliance with the requirement of § 406.033(f)(3) that "the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor." Tex. Labor Code Ann. § 406.033(f)(3) (West 2011).

It is undisputed Gunn saw Veggeberg on February 16. Taking as true all evidence favorable to Gunn, and indulging every reasonable inference in her favor, we see in the record no dispute that Gunn signed the waiver document on February 17. Gunn made clear in her testimony that she was not saying the waiver was among the documents she signed at Veggeberg's office, and we see no reasonable inference from her testimony that the waiver was signed at that time. We find there is no genuine issue concerning the waiver's compliance with § 406.033(f)(3).

Conspicuousness

Section 406.033(g) provides, "[t]he waiver provisions required under Subsection(f) must be conspicuous and appear on the face of the agreement. To be conspicuous, the waiver provisions must appear in a type larger than the type contained in the body of the agreement or in contrasting colors." Tex. Labor Code Ann. § 406.033(g) (West 2011).

The document Gunn signed on February 17, by which she enrolled in BSA's "occupational injury benefit program" and waived her causes of action, consists of six

paragraphs, all on one page. The paragraphs entitled "Waiver" and Acknowledgements" are the last two of the six paragraphs. After the sixth paragraph is a signature line for the employee and a witness. Gunn's signature and that of Lewis appear on the copy in the record. The "Waiver" paragraph is distinguished from the other five paragraphs by appearing in all capital letters. It is not in a contrasting color.

Whether a provision meets a conspicuousness requirement is a question of law, determined in this case by the § 406.033(g) definition. *See Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990) (applying, as question of law, Business & Commerce Code definition to disclaimer of warranty). Gunn's argument is that the waiver paragraph does not "appear in a type larger than the type contained in the body of the agreement" because the "font size" is the same throughout the document. We see no error in the trial court's implicit conclusion that the waiver paragraph, appearing in all capital letters, appears in a type larger than that of the rest of the agreement. Other cases have found all capital letters to be conspicuous in comparable contexts. *See e.g. Amtech Elevator Servs. Co. v. CSFB 1998-PI Buffalo Speedway Office Ltd. P'ship*, 248 S.W.3d 373, 377-78 (Tex.App.—Houston [1st Dist.] 2007, no pet.) (finding capitalized heading with following language in all capital letters attracts the attention of a reasonable person and is thus conspicuous); *Lopez,* 2011 Tex.App. LEXIS 2342, at *40 (finding reasonable person ought to have noticed the section because the entirety of the first paragraph was written in all capital letters).

Express Negligence Doctrine

Gunn's argument under the heading of conspicuousness also contains a contention BSA's waiver does not comply with the express negligence doctrine. She

argues BSA's waiver does not expressly state its intent that the signer waives claims arising from BSA's own negligence. Under the doctrine of express negligence, "the intent of the parties must be specifically stated in the four corners of the contract." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190,192 (Tex. 2004) (*quoting Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)). The rule requires some express language that would indicate an intention to waive claims of a party's own negligence. *Fisk Elec. Co. v. Constructors & Assocs., Inc.,* 888 S.W.2d 813, 815-16 (Tex. 1994); *Lehmann v. Har-Don Corp.,* 76 S.W.3d 555, 562 n.3 (Tex.App.—Houston [14th Dist.] 2002, no pet.).

*Citing Reyes,* 134 S.W.3d at 192, Gunn asserts that a lay person reading BSA's waiver would not be put on notice that the person signing the document is giving up rights relating to BSA's "own" negligence. BSA responds that *Reyes* and the express negligence doctrine do not apply to post-injury waivers under the current § 406.033, and further argues the doctrine applies only to indemnification against future acts of negligence, not past acts.[5]

Assuming, without deciding, that the express negligence doctrine, *per se,*[6] has application here, we find it satisfied. In addition to the language of the "waiver" and "acknowledgement" paragraphs we have cited from BSA's document, its second paragraph begins with language stating, "I want to apply for Benefits offered to me under the no-fault BSA Occupational Injury Benefit Program (hereinafter "the Program").

---

[5] For the latter proposition, BSA relies on *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 387 (Tex. 1997), and *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.,* 35 S.W.3d 658, 669 (Tex.App.—Houston [1st Dist.] 2000, pet. denied).

[6] Neither party addresses the language of § 406.033(f)(4) in this context.

To qualify, I understand I must accept the rules and conditions of the Program and waive my right to sue [BSA and other named affiliated organizations] and their agents, affiliates, and employees for damages of any nature I have suffered." This passage, coupled with the other language in the document, clearly reveals an intent to release BSA from its own negligence or gross negligence, if any. The document's language is similar to language courts have found to satisfy the express negligence requirement. *See Lawrence v. CDB Servs.*, 44 S.W.3d 544, 546, 553-54 (Tex. 2001); *Lopez,* 2011 Tex.App. LEXIS 2342, at *38-42.

## Conclusion

Finding the trial court's judgment supportable under BSA's affirmative defense of waiver, we need not address Gunn's challenge to other grounds urged by BSA. We resolve Gunn's sole issue against her and affirm the judgment of the trial court.

James T. Campbell
Justice