

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00227-CV

BLACK BULL TOWING, LLC AND                           APPELLANTS
5620 TX LINCOLN ARLINGTON,
LLC D/B/A WHISPERING WOODS

V.

PETE E. YBARRA                                            APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 2013-004651-1

----------

## MEMORANDUM OPINION[1]

----------

In five issues, appellants—Black Bull Towing, LLC and 5620 TX Lincoln Arlington, LLC d/b/a Whispering Woods—challenge the trial court's final judgment and underlying summary judgment in an appeal from claims alleging improper towing. We affirm in part and reverse in part.

---

[1]*See* Tex. R. App. P. 47.4.

Black Bull Towing towed appellee Pete E. Ybarra's vehicle from the Whispering Woods apartment complex's parking lot twice because Ybarra's daughter—who was driving the car and was visiting an apartment resident—did not have a valid or unexpired visitor's permit. Each time, Ybarra paid Black Bull $293.30 to release his vehicle. Ybarra sued appellants for violations of the Texas Towing and Booting Act and violations of the Texas Theft Liability Act.[2] In the petition, he requested a declaratory judgment "that the tows . . . were unjust and without probable cause, and without notification as required under the Texas Towing and Booting Act." He also sought damages and attorney's fees.

Ybarra moved for a summary judgment on all of his claims. After determining that it had jurisdiction over the dispute, the trial court granted Ybarra's summary judgment motion and awarded him damages and attorney's fees. After appellants filed a motion for new trial, the trial court modified the summary judgment to delete the declaratory judgment, damages for violations of the Texas Theft Act, and attorney's fees award. It then rendered a "Final Order" awarding Ybarra damages for each tow under the Towing and Booting Act, costs, and postjudgment interest.

**Issues on Appeal**

In five issues, appellants argue that (1) the trial court did not have jurisdiction over Ybarra's Towing and Booting Act claims, (2) Ybarra did not meet

---

[2]He also included a claim for conversion, but it was specifically pled "[a]lternatively" to the Texas Theft Act claim.

his summary judgment burden to conclusively establish a violation of the Towing and Booting Act, (3) Ybarra did not conclusively establish that any violation of the Towing and Booting Act was knowing, reckless, or intentional, (4) the trial court's final judgment was improper because it impliedly denied Ybarra's Theft Act claims without giving appellants an opportunity to seek attorney's fees, and (5) the trial court erred when it granted Ybarra's motion for summary judgment.

## Jurisdiction

In their first issue, appellants contend that the trial court did not have jurisdiction over Ybarra's Towing and Booting Act claims. The Towing and Booting Act is contained in Chapter 2308 of the Texas Occupations Code. Tex. Occ. Code Ann. § 2308.001 (West 2012). Appellants point to section 2308.453, which provides that "[a] hearing under this *chapter shall* be in any justice court in . . . the county from which the motor vehicle was towed." *Id.* § 2308.453 (West Supp. 2014) (emphasis added). Appellants contend that this section requires that any cause of action brought for violation of any part of the Towing and Booting Act must be brought in the justice court. Ybarra counters that this section applies only to certain claims under the Towing and Booting Act, not to the claims he brought under section 2308.404. *Id.* § 2308.404 (West 2012).

Section 2308.452 of the Occupations Code provides that "[t]he owner or operator of a vehicle that has been removed and placed in a vehicle storage facility or booted without the consent of the owner or operator of the vehicle is entitled to a hearing on whether probable cause existed for the removal and

3

placement or booting." *Id.* § 2308.452 (West 2012). The only issues to be decided at this type of hearing are (1) whether probable cause existed for the removal and placement of the vehicle and (2) whether a towing charge imposed or collected in connection with the removal or placement of the vehicle was greater than the amount authorized by applicable statutes. *Id.* § 2308.458(c) (West 2012). The recoverable damages are limited to

(1) court costs and attorney's fees to the prevailing party;

(2) the reasonable cost of photographs submitted under Section 2308.456(b)(8) to a vehicle owner or operator who is the prevailing party;

(3) an amount equal to the amount that the towing charge or booting removal charge and associated parking fees exceeded [authorized] fees . . . ; and

(4) reimbursement of fees paid for vehicle towing, storage, or removal of a boot.

*Id.* § 2308.458(e).

In contrast, section 2308.404 requires an owner or operator of a towed vehicle to show only a violation of the Act and the amount of damages caused thereby, including the amount of any towing fees; therefore, it is a strict liability statute. *Id.* § 2308.404(a), (b); *Whitten v. Vehicle Removal Corp.,* 56 S.W.3d 293, 307 (Tex. App.—Dallas 2001, pet. denied). Upon proof that the violation of the Act was intentional, knowing, or reckless, the recoverable damages are increased to "$1000 plus three times the amount of fees assessed in the

4

vehicle's removal, towing, storage, or booting." Tex. Occ. Code Ann. § 2308.404(c).

Construing the statutory scheme in its entirety, we conclude that a proceeding under section 2308.452 is separate from a proceeding under section 2308.404. *See Sisavath v. Oates*, No. 05-12-01027-CV, 2014 WL 1010162, at *2 (Tex. App.—Dallas Mar. 13, 2014, no pet.) (mem. op.) (holding that issues decided in prior 2308.452 hearing based on same tow were not res judicata of issues in later 2308.404 suit). The two proceedings involve separate issues and allow for the recovery of different damages. Only section 2308.453 limits the type of court in which such a proceeding may be brought.

Construing the word "chapter" in section 2308.453 to mean anything other than "subchapter" would lead to a result in contravention of the remainder of the Act's provisions. *See* Tex. Gov't Code Ann. § 311.021(2) (West 2013). For instance, sections 2308.454 and .455 provide that upon an owner's or operator's payment to retrieve a towed vehicle, the towing company or vehicle storage facility must provide the person retrieving the vehicle a notice that includes a statement of "the person's right to submit a request within 14 days for a court hearing to determine whether probable cause existed to remove . . . the vehicle," the person's right to request a hearing in the justice court, and "the name, address, and telephone number of each justice court in the county from which the vehicle was towed . . . or the address of an Internet website maintained by the Office of Court Administration of the Texas Judicial System that contains the

name, address, and telephone number of each justice court in that county." Tex. Occ. Code Ann. §§ 2308.454, .455 (West 2012 & Supp. 2014). Upon receiving the notice, the person must request a hearing within fourteen days or waive the right to have one. *Id.* § 2308.456(a), (d) (West 2012). Thus, the hearing and notice sections refer only to the "probable cause" issue to be determined in a hearing under section 2308.452.

In contrast, subchapter I, in which section 2308.404 is found, also includes provisions authorizing up to a Class B misdemeanor criminal penalty for a knowing and intentional violation and an injunction for violations of the chapter. *Id.* §§ 2308.405, .406 (West 2012); *see* Tex. Penal Code Ann. § 12.22 (West 2011). The punishment for a Class B misdemeanor can include jail time; thus, a justice court would have no jurisdiction to hear a dispute under section 2308.405 in which it was alleged that the conduct was intentional and knowing. *See* Tex. Const. art. V, § 19; Tex. Code Crim. Proc. Ann. art. 4.11 (West 2015); Tex. Penal Code Ann. § 12.22(2); *Cooksey v. State*, 377 S.W.3d 901, 904 (Tex. App.—Eastland 2012, no pet.).

Accordingly, we hold that section 2308.453 does not apply to the claims under section 2308.404 upon which the trial court granted summary judgment; therefore, the trial court properly exercised jurisdiction over those claims. We overrule appellants' first issue.

## Summary Judgment

Appellants' remaining four issues challenge the propriety of the summary judgment.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if he conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

**Conclusive Proof of Violation**

Appellants contend that Ybarra failed to conclusively prove a violation of the Towing and Booting Act. Ybarra claimed four violations of the Act: (1) that the lettering on the parking lot signs was smaller than the statutorily-required two inches in height, (2) that the bottom edge of the signs was less than the required five feet off the ground, (3) that there was no written confirmation from Whispering Woods, the property owner, to Black Bull Towing that the signs

7

required by the Act had been placed on the property, and (4) that Black Bull Towing did not have standing authority to tow for lack of a visitor's parking permit. *See* Tex. Occ. Code Ann. §§ 2308.255(d), .301(a)(5), .302(c)(1) (West 2012). Appellants claim that Ybarra failed to negate the "minor variation" exclusion of the Act. *Id.* § 2308.407 (West 2012).

**Height of Lettering**

Section 2308.302(c)(1) provides that to comply with the Act, a sign warning of the right to tow must contain the international towing symbol and immediately underneath that symbol "in lettering at least two inches in height, . . . the words . . . (A) 'Towing and Booting Enforced'; (B) 'Towing Enforced'; or 'Booting Enforced,'" as applicable. *Id.* § 2308.302(c)(1). Section 2308.407 provides that "[a] minor variation of required or minimum height of a sign or lettering is not a violation." *Id.* § 2308.407.

In an uncontroverted affidavit, Ybarra averred that he used a yard stick to measure a sign at the entrance of the parking lot and that it was the same sign present at the time of both tows. The lettering below the international towing symbol read, "Towing Enforced at all Times Resident Parking Only," but the letters measured approximately one inch in height and the entire message was only two inches in height with the phrases combined. Ybarra also took photographs of these measurements, which he attached as summary judgment proof. Ybarra argues that as a matter of law, a fifty percent variation in the lettering size is not a minor variation allowed by section 2308.407.

8

One of Ybarra's photographs, attached to this opinion, shows the entire signage, which consists of three different signs. The top sign shows the statutorily-required international towing symbol. Directly underneath, in white letters against a dark background are the words,

TOWING ENFORCED AT ALL TIMES
RESIDENT PARKING ONLY[.]

The lettering in each line is slightly less than one inch tall, and the entire box of lettering is two inches tall. The rest of the top sign, in roughly the same lettering size, states,

UNAUTHORIZED VEHICLES WILL BE TOWED
AT OWNER'S OR OPERATOR'S EXPENSE
VEHICLES PROHIBITED, FOR SALE VEHICLES
ABANDONED, INOPERABLE ON JACKS OR BLOCKS, FLAT
TIRES PARKING ON GRASS UNAUTHORIZED HANDICAP
PARKING, BLOCKING DRIVE OR DUMPSTER EXPIRED
INSPECTION OR REGISTRATION, VEHICLES WITHOUT
REQUIRED PERMIT, VISITOR PASS, UNAUTHORIZED
VEHICLES IN ASSIGNED OR RESERVED SPACES
NO TRACTOR/TRAILER PARKING
NO PARKING IN FIRE LANES[.]

Directly underneath, at the bottom of the top sign, is the following, also in white lettering with a dark background: "TO LOCATE VEHICLE THAT HAS BEEN TOWED CALL 817-457-2462 BLACK BULL TOWING . . . WILBARGER ST. FT WORTH, TX 76119."

Directly underneath the top sign is another sign, which begins in large letters, "WELCOME." Directly underneath that is another tow symbol with letters that state, "PARKING PERMIT REQUIRED." Underneath the symbol, in much

9

smaller letters, is a state of Texas symbol in a box with verbiage that is unreadable from the summary judgment photograph.

Finally, there is a bottom sign, which appears to be torn in half. The top part of the sign, in white lettering against a dark background states,

VISITOR PAR
PERMITS ARE RE
AT ALL TIM[.]

Following that, in dark letters against a white background is the following:

VEHICLES T
DO NOT HA
VISITOR PARKING
WILL BE TOW
OWNERS EXP[.]

No cases yet construe section 2308.407. However, in other circumstances, whether a provision meets a statutory conspicuousness requirement is a question of law. *Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990); *Gunn v. Baptist/St. Anthony's Health Network*, 405 S.W.3d 239, 245 (Tex. App.––Amarillo 2013, no pet.). Conspicuousness of a particular provision is typically measured against the document as a whole. *See Cate*, 790 S.W.2d at 560–61. In the same way, we agree that whether a minor variation in the lettering requirement of section 2308.302(c)(1) exists is a question of law.

The Texas Commission of Licensing and Regulation is charged with promulgating administrative rules in accordance with the Towing and Booting Act. *See* Tex. Occ. Code Ann. §§ 2308.002(2), .057 (West 2012). The Texas Department of Licensing and Regulation is governed by the commission and is

10

charged with primary oversight of the towing industry in Texas. *See id.* § 51.051 (West 2012). A sample sign for "Resident and Guest Parking Towing Sign with descriptions," can be found at the Department's website, under the heading, "Tow Trucks, Operators and Vehicle Storage Facilities," and further subheading of "Resident and Guest Parking Towing Sign with descriptions": http://www.tdlr.texas.gov/towing/towing.htm.

*Webster's Third New International Dictionary* defines "minor" as "inferior in importance[,] comparatively unimportant[,] lower in standing or reputation than others of the same kind." Webster's Third New International Dictionary 1439 (2002). The presence of a towing sign that meets the statutory requirements is a method of providing general notice to all persons parking in an area that a car is subject to towing if it is not in compliance; this is in lieu of a personalized notice. *See* Tex. Occ. Code Ann. § 2308.252 (West Supp. 2014) (providing that a parking facility owner may tow an unauthorized vehicle without the owner's consent only upon proper notice, which includes either the placement of signs "that comply with Subchapter G" or actual notice via the methods described in the statute). The two-inch lettering requirement is intended to clearly and quickly inform someone parking in the facility of the possibility that the person's car could be towed. *See generally id.* §§ 2308.252, .301–.305. The sign on Whispering Woods's parking lot, although containing the required language, when combined with the damaged condition of the bottom sign and when compared to the sample sign on the Department's website, also contains so much other language

11

that it is not immediately clear under what circumstances a vehicle could be towed, especially a vehicle belonging to a guest of a resident. Therefore, we agree with the trial court that, as a matter of law, the one-inch variation of the lettering on this sign is not a minor violation of section 2308.302(c)(1).

**Clearance of Sign from Ground**

Regarding the bottom sign's height from the ground, which Ybarra's evidence shows was only approximately twenty inches instead of sixty, we agree with appellants that sections 2308.301 and .302 are read together; in other words, section 2308.302 more particularly describes the contents of the type of sign required by section 2308.301. Here, the top sign, which contains the information required by sections 2308.301 and 2308.302, is greater than five feet off the ground. However, the bottom, broken sign purports to elaborate further on the type of vehicle subject to towing, i.e., that of a person visiting a resident without a valid permit; therefore, it is part of the required statutory notice. *See id.* §§ 2308.301(b)(4), .302(d). The five-foot-height requirement from the ground, like the required size of the lettering, has been determined by the Legislature to be sufficient to be conspicuous enough to provide appropriate notice. Accordingly, we conclude and hold that as a matter of law, the sign's deviation from the height-off-the-ground requirement was not a minor violation of the statute.

**Notice of Presence of Sign**

Section 2308.255(a) provides that a towing company may tow "an unauthorized vehicle" without the owner's or operator's consent, at the owner's or operator's expense, if "the towing company has received written verification from the parking facility owner that . . . the parking facility owner has installed the signs required by Section 2308.252(a)(1)" or if the owner or operator of the vehicle has received actual notice that the particular vehicle will be towed. *Id.* § 2308.255(a). It is undisputed that Ybarra did not get prior, actual notice of the towing of the vehicle. Ybarra contends that because he sent a request for production of "any document regarding the tow signs provided" and appellants did not provide "any documentation evidencing the required written verification," he conclusively proved an absence of such notice.

That appellants failed to respond to Ybarra's request for production with a document proving such notice is not evidence that such notice does not exist. *See Nutting v. Nat'l Homes Mfg. Co.*, 639 S.W.2d 721, 724 (Tex. App.—Austin 1982, no writ). Further, appellants at least raised a fact question as to whether the parties' signed agreement was evidence of such notice. The agreement states, in part,

> In compliance with State Law 684.012, towing signs are the private property of B.B.T. Please do not allow other wrecker companies or your staff to remove our signs. Signs are valued at $25.00 each and may be charged to Property Owner if not removed in the manner provided in this agreement.

Accordingly, we hold that Ybarra did not conclusively prove that appellants violated section 2308.255(a) of the Act.

**Scope of Written Agreement**

Section 2308.255(c) provides that, unless a parking facility owner specifically requests the tow of a specific vehicle, a towing company may tow a vehicle only if the company and parking facility owner have "a standing written agreement . . . to enforce parking restrictions in the parking facility." Tex. Occ. Code Ann. § 2308.255(d). Appellants attached to their summary judgment response a copy of the tow agreement between them allowing Black Bull to tow any "unauthorized vehicles" from the parking lot. At the bottom of the page, several options of types of vehicles are marked, including "Resident Stickers." The statute defines unauthorized vehicle as "a vehicle parked, stored, or located on a parking facility without the consent of the parking facility owner." *Id.* § 2308.002(13). At the very least, this contract provision raises a fact issue as to whether the parties had a standing written agreement for Black Bull to tow any vehicles without proper visitor permits on them. Accordingly, we hold that Ybarra failed to conclusively prove a violation of this part of the statute.

We overrule appellants' second issue in part and sustain it in part.

**No Heightened Mental State Shown**

In their third issue, appellants contend that Ybarra did not conclusively prove that the violations of the statute he alleged were committed intentionally,

14

knowingly, or recklessly as required to recover damages under section 2308.404(c). We agree.

In his motion for summary judgment, Ybarra alleged that he proved this element because he showed that appellants intentionally and deliberately towed the vehicle both times. However, by the statute's plain language, the heightened mental states entitling a party to minimum statutory damages refer to the "violation," not the tow. *Id.* § 2308.404(c). Therefore, Ybarra had to conclusively prove that appellants towed the vehicle both times knowing that the sign was not in compliance with sections 2308.301 or .302 or with an awareness of the risk that the sign was noncompliant, which they consciously disregarded.

Ybarra contends that (1) a "towing company or parking facility that fails to comply with the clear statutory requirements of 2308.301 et seq. is at a minimum reckless" and (2) that recklessness is shown because "[t]he service agreement between [appellants] states that the towing signs are the private property of 'B.B.T.'" According to Ybarra, Black Bull "either made or paid someone to make the non-compliant signage. As a towing company licensed by the . . . Department . . . Black Bull Towing, LLC is familiar (or should be familiar) with the legal requirements involved in performing non-consent tows." Ybarra is essentially arguing either (a) that proof of a violation is itself proof of

recklessness or (b) that Black Bull, as a tow operator subject to the Act, should have known the legal requirements for the signs.[3]

We conclude that to prove a reckless violation of the statute, a plaintiff must prove more than a mere violation. Recklessness generally requires proof that a party had knowledge or awareness of a condition but did not care about the result. *See, e.g.*, *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 & n.19 (Tex. 2006); *Black's Law Dictionary* 1462 (10th ed. 2014) (defining "reckless" as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash"); *cf.* Tex. Penal Code Ann. § 6.03(c) (West 2011) (defining recklessness in the criminal context as follows: "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the

---

[3]Arguably, this theory was not presented in Ybarra's motion for summary judgment, which argued only that (1) the tows themselves were intentional and not the result of a mistake, (2) the vehicle was operable and not in violation of any parking laws, and (3) appellants committed more than one violation of the statute. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (holding that a court cannot grant summary judgment on grounds not presented in motion).

16

actor's standpoint."). Because the statute is a strict liability statute, no mental state is required to show a violation and, therefore, to recover basic damages. *See* Tex. Occ. Code Ann. § 2308.404(b). But, similar to the treble damage provision in the DTPA, the Act's prerequisite of a showing of a heightened intentional, knowing, or reckless mental state to recover minimum and trebled damages has both a deterrent and incentivizing effect on the towing company and parking facility; the goal is to discourage unscrupulous towing practices in violation of the Act. *See Whitten*, 56 S.W.3d at 308 (holding that prior version of Act codified in Transportation Code was "at bottom a consumer protection statute which seeks to protect economic interests"); *cf. Pennington v. Singleton*, 606 S.W.2d 682, 686 (Tex. 1980) ("To provide individual consumers with a method and incentive to discourage deceptive trade practices, the legislature included § 17.50 [in the DTPA,] thereby creating a private cause of action for mandatory treble damages.").

Here, the signs themselves show an attempt to comply with the Act. The mere fact that Black Bull provided the signs to Whispering Woods does not show that it did not care about the risk of a violation, especially considering that the signs themselves contained the statutorily-required language and went into great detail to describe the types of unauthorized vehicles subject to tow. That the signs were not sufficient to meet the Legislature's minimum requirement to show adequate notification, in and of itself, does not shed light on Black Bull's knowledge of the specific statutory requirements or the reason the signs were

17

noncompliant. Nor does it show anything about Whispering Woods's mental state. Accordingly, we hold that the trial court erred by determining that Ybarra conclusively proved that appellants' violations of the sign requirements in sections 2308.301 and .302 were intentional, knowing, or reckless.

We sustain appellants' third issue.

**Theft Act Claims**

In their fourth issue, appellants contend that the trial court improperly granted a final judgment while Ybarra's Theft Act claims remained pending. The modified summary judgment order addressed only the Towing and Booting Act claim and did not mention or rule on the Theft Act or declaratory judgment claims. However, in their reply to Ybarra's response to their motion for new trial, appellants specifically asked the court to either allow the Theft Act claims to remain pending or to "delete" the Theft Act and declaratory judgment claims. This the trial court did in the final judgment. Having invited this result, appellants cannot now complain of it. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding); *Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 787 (Tex. App.—Fort Worth 2014, pet. dism'd w.o.j.). We overrule appellants' fourth issue.

Based on the foregoing, we therefore overrule appellants' fifth issue complaining generally about the propriety of the summary judgment in part; we sustain it to the extent that the trial court awarded damages under subsection (c) of section 2308.404.

18

## Conclusion

Having overruled appellants' first, fourth, and part of their second and fifth issues, we affirm the trial court's summary judgment for Ybarra on his Towing and Booting Act claims based on a violation of the signage requirements of sections 2308.301 and .302 of the Act. But having sustained appellants' third issue and part of their fifth issue, we reverse the trial court's award of $1,000 plus triple the amount of towing charges for each tow. We remand the case for further proceedings on Ybarra's claim for increased statutory damages under section 2308.404(c). *See Grace v. Thompson*, No. 03-12-00729-CV, 2014 WL 3055958, at *5 (Tex. App.—Austin July 3, 2014, pet. denied) (mem. op.).

/s/ Dixon W. Holman

DIXON W. HOLMAN
SENIOR JUSTICE

PANEL: GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: June 11, 2015

