

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00381-CV

DALWORTH RESTORATION, INC.                                    APPELLANT

V.

MRS. ANGIE RIFE-MARSHALL                                        APPELLEE

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant Dalworth Restoration, Inc. appeals the trial court's money judgment in favor of appellee Mrs. Angie Rife-Marshall. In one issue, appellant contends that the trial court erred by not applying a settlement credit under section 33.012(b) of the civil practice and remedies code.[1] We reverse the trial court's judgment and render a take-nothing judgment for appellant.

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b) (West 2008).

## Background Facts[2]

In 2009, appellee sued Liberty Mutual Insurance Company (Liberty Mutual), Larry Pitman, and Noel Najera (the original defendants). In her original petition, appellee alleged that she had owned a home in Colleyville, that Liberty Mutual had insured the home, that an April 2007 hailstorm had damaged the home, and that Liberty Mutual (along with its employees, Pitman and Najera) had failed to properly process an insurance claim after the storm. Appellee asserted that her home was not timely repaired, that it was not habitable, and that the original defendants were "responsible for causing [it] to basically be destroyed." She also asserted that items inside her home had been taken from her, that she had been forced to live "in rented housing using rented furnishings," and that Liberty Mutual had threatened to throw her "out into the street."

Appellee assigned blame to the original defendants for causing damage to her home's contents, for taking her possessions without her permission, and for failing to provide an inventory for items that were removed from the home. She pled, "As a direct and proximate result of [the original defendants'] conduct . . . ,

---

[2]The clerk's record and reporter's record are lengthy. Because appellant does not contest pretrial rulings or the jury's findings on liability or damages, we will only briefly summarize the procedural history of this case and the evidence presented at trial.

[appellee's] furniture and household goods and personal possessions . . . have all been taken . . . or in some cases even destroyed."[3]

From the factual allegations in her petition, appellee brought several claims against the original defendants, including breach of contract, negligence, and gross negligence. Appellee attached an engineering report to her petition. The report said that water leakage had caused "structural, electrical, and mechanical problems." It also stated that after mold had been discovered in the house, Liberty Mutual had hired appellant to make appellee's home environmentally safe, but mold remediation work had not been completed. The report concluded by stating that appellee's residence had been "adversely affected by 11 months of roof water leakage after a hailstorm."

The trial court entered a temporary restraining order that prohibited the original defendants from causing appellee to be "put out onto the street," among other restrictions. The original defendants answered by asserting a general denial and several affirmative defenses. They also pled that the suit should be abated because they had filed a declaratory judgment suit against appellee in federal court before she had filed her state-court petition.

---

[3]The record also contains a letter from appellee's counsel regarding a possible settlement with the original defendants. In the letter, counsel wrote, "The furnishings of the subject home, and the personal possessions of [appellee] and her sons, were taken from them. *Liberty Mutual did this* . . . and so everything will need to be replaced. . . . For present purposes we will say that the cost to replace these items will be $245,000.00." [Emphasis added.]

3

In 2010, appellee added appellant as a defendant. Appellee alleged that appellant had been paid for remediation work at the house but had not completed the work and had made parts of the house worse. Similarly to her allegations against the original defendants, she also alleged that appellant had taken her personal property and damaged other property.[4] She sued appellant for negligence, negligence per se, gross negligence, conversion, and breach of contract. Against appellant, appellee asked for actual and exemplary damages. Also in 2010, appellee settled her claims against the original defendants and nonsuited those claims.

Appellant asserted a general denial and pled that "all of the prior [d]efendants" in the litigation were responsible third parties. Appellee objected to appellant's attempt to designate responsible third parties. Later, appellant contended that some of the responsible third parties were "settling parties." In other pretrial documents, appellant alleged that appellee had settled with the original defendants for approximately $600,000; appellant also informed appellee that it did not want to "exclude the settling parties from the case."

Later, appellant agreed to an order in which the trial court found that any request for designating a responsible third party was moot. Although the original defendants were no longer formally in the case, appellant asked for the trial court

---

[4]Appellee contended that her "lost and unaccounted for personal property included fur coats, jewelry, . . . boots, and many other items of household goods." She also alleged that appellant had ruined almost all of her furniture and appliances.

4

to submit jury questions about whether they had contributed to appellee's damages.

In an April 2012 pretrial hearing that concerned discovery matters and other issues, appellant orally informed the trial court[5] three times that appellee had settled her claims against Liberty Mutual for $600,000. During that hearing, appellant twice contended that it should receive a credit for the money that Liberty Mutual had paid to appellee; appellant stated that it did not want to wait to raise the settlement-credit issue "at the last moment."

Later that month at the trial that solely concerned appellee's claims against appellant, appellee presented evidence to establish, among other facts, that she had water leakage in her home after the April 2007 hailstorm had damaged its roof;[6] that a company specializing in dehumidification but not licensed in mold remediation had found significant mold in the home; and that appellant (which is licensed to remediate mold) had started working in the home in April 2008 upon contact from appellee's insurance company. According to appellant's general manager, appellant's initial duties at the home were to pack and remove its contents; remove sheetrock, carpet, and insulation; clean air ducts; and run three "air scrubbers." Appellee believed that appellant had agreed to remove "all of [her] items off of the property" and remediate the mold in her home. Several of

---

[5]Three judges successively presided over the proceedings in the trial court.

[6]The damage to the roof was not fully repaired until February 2008.

5

appellant's employees, including temporary employees, worked at the home. They removed some contents from the home but did not immediately provide appellee with an inventory of those items.

Appellant worked at the home for four to five weeks before another contractor worked there later in 2008. Appellant did not replace the sheetrock it had removed from walls and ceilings, nor did it install new carpet or insulation after removing some of those items. According to appellant's general manager, however, appellant had not been hired to install new carpet or sheetrock; he testified that appellant had performed all of the work that Liberty Mutual had assigned to it. Also, appellant did not return all of the personal property that it had removed from the home, deeming some of the property to be unsalvageable.

According to appellee's father, some of the items that appellant returned to appellee were in poor condition. Appellee testified that appellant had never returned many items to her—including a turkey roaster, boots, coats, and jewelry—and had moved other items (including furniture) to a garage, where they were damaged and rendered unusable.[7] She also testified that appellant left food in her refrigerator, freezer, and pantry, which caused a bad odor and attracted varmints. Finally, appellee testified that appellant had dealt with her

---

[7]The trial court admitted a list of items that appellee claimed were lost or damaged, along with those items' value. Appellee testified that that total value of lost or damaged items was $111,658.48.

abruptly and unprofessionally.[8]  The evidence established that appellee moved back into her home in June 2010 but that her missing personal property caused her to cry and be "devastated."

In the middle of the trial, before the submission of the case to the jury, appellant informed the trial court that it wanted to offer proof of appellee's settlement with the original defendants for the purpose of receiving a credit. Later, after the parties rested and closed but before they presented closing arguments, they offered a written stipulation to the trial court concerning the settlement.  The stipulation, which, on its face, included objections made by appellee but denied by the trial court,[9] stated, in part,

> COME NOW both parties . . . to make this statement of the proposed evidence with which this document deals . . . :
>
> (1) There has been a prior settlement made between Liberty Mutual . . . and [appellee], which was actually made in mediation proceedings ordered by a federal court in connection with a separate case, at a mediation that occurred late in November of 2009, and prior to the time when [appellant] had been named a party to this state court case . . . .
>
> (2) In connection with the said settlement, . . . funding was provided by Liberty Mutual, . . . and the settlement funding was paid to [appellee], and her deposition testimony in this case as taken by

---

[8]Appellant presented evidence that the home was disheveled and that many of appellee's items were damaged before it began working in the home. Also, appellant presented evidence that it left items at the home that Liberty Mutual did not direct it to take.

[9]We will discuss the substance of some of these objections below.

[appellant's counsel] in a deposition in January, 2012, indicates the settlement amount at $600,000.00.

(3) The federal court ordered that the settlement proceedings be confidential, and the documents pertaining to settlement did themselves indicate that the settlement would be confidential, but in connection with this document it is noted that testimony at deposition as to amount has been given . . . *and it is also noted that as a result of the settlement agreement, . . . the claims against Liberty Mutual, and against Mr. Larry Pitman, and against Mr. Noel Najera, brought in this state court action were dismissed fully and finally.*

(4) [Appellee] states [and [appellant] does challenge][10] that in connection with the settlement it was the intention and agreement of the parties to the settlement that any third party claims . . . that [appellee] might have were not being settled . . . ; and, as has been testified to in this case . . . , she made the settlement with Liberty Mutual so that she could rebuild her house and accomplish, thereby, the necessary structural repairs to move back into it; but the parties to the settlement agreed and understood that the settlement did not embrace or contemplate a settlement of any claims not before the federal court save and except for the agreement to release and dismiss with prejudice Liberty Mutual and Mr. Larry Pitman and Mr. Noel Najera from the state court proceedings in this instant case. [Emphasis added.]

While admitting the stipulation, the trial court expressed understanding that its purpose was to determine a settlement credit. The court also stated,

It's my further belief, based upon, I think, discussions that we've engaged in informally, that [appellant's counsel] does not -- although I don't know this for certain -- but I don't think he has a copy of the settlement agreement, because it was a confidential

_____

[10]This four-word bracketed portion appears within the original written stipulation.

8

document that existed between [appellee] and Liberty Mutual Insurance Company. So it's my belief that [appellant's counsel] is just trying to get this evidence before the Court in the best manner that he can.

On appellant's request and despite appellee's objection, the trial court included a question in the jury charge about whether Liberty Mutual, Pitman, and Najera were responsible for any of the damages that appellee had incurred.[11] After listening to the parties' closing arguments, the jury found that appellant's negligence had proximately and solely caused an injury to appellee. A non-unanimous jury awarded appellee $101,000 in damages related to her personal property and $50,000 for mental anguish.

Appellee filed a motion for judgment on the verdict. Appellant also filed a motion for judgment, contending that appellee had not "recovered in excess of the [settlement] credit." Appellee objected to the court's application of any credit, contending that appellant had not pled for or proved grounds for a credit. Appellee characterized appellant's request for a settlement credit as an affirmative defense. Appellant replied by arguing that it was not required to plead for a credit and that it could have asked for a credit for the first time after the jury's verdict.

---

[11]Appellant contended during the charge conference that the original defendants were settling parties and that appellee had sworn that they were the source of her damages. Section 33.003 of the civil practice and remedies code requires the factfinder to determine the percentage of responsibility of claimants (including plaintiffs), defendants, and settling persons. Tex. Civ. Prac. & Rem. Code Ann. §§ 33.003(a), .011(1) (West 2008).

9

The trial court signed a final judgment in favor of appellee for $163,080 ($151,000 plus $12,080 in prejudgment interest). The court did not award a settlement credit to appellant. Appellant filed a motion for new trial in which it again raised the settlement-credit issue, cited chapter 33 of the civil practice and remedies code, and argued that the trial court should have entered a take-nothing judgment. The trial court denied appellant's motion for new trial, and appellant brought this appeal.

**Appellant's Entitlement to a Settlement Credit**

In its only issue, appellant contends that it is entitled to the application of a settlement credit under chapter 33 of the civil practice and remedies code and that the trial court erred by not applying the credit. Appellant argues that it is entitled to the credit because it proved the existence and amount of appellee's settlement with the original defendants (resulting in their dismissal in the state court case) and because appellee did not tender the settlement agreement to prove that the settled claims against the original defendants were unrelated to the unsettled claims against appellant.

As we have explained,

> A trial court's determination of the existence or amount of a settlement credit is reviewed for an abuse of discretion. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.

10

*Ramsey v. Spray*, No. 02-08-00129-CV, 2009 WL 5064539, at *2 (Tex. App.—Fort Worth Dec. 23, 2009, pet. denied) (mem. op.) (footnotes omitted); *see Tex. Capital Sec., Inc. v. Sandefer*, 108 S.W.3d 923, 925 (Tex. App.—Texarkana 2003, pet. denied) ("A trial court's determination of the existence of, or the amount of, a settlement credit is reviewed for an abuse of discretion.") (citing *Goose Creek Consol. ISD v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 504 (Tex. App.—Texarkana 2002, pets. denied)); *see also Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, 382 S.W.3d 619, 623 (Tex. App.—Fort Worth 2012, no pet.) (cautioning that a trial court has no discretion in determining what the law is or in applying the law to facts).

Chapter 33 of the civil practice and remedies code applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a)(1) (West 2008); *see also Underwriters at Lloyds v. Edmond, Deaton & Stephens Ins. Agency, Inc.*, No. 14-07-00352-CV, 2008 WL 5441225, at *3 (Tex. App.—Houston [14th Dist.] Dec. 30, 2008, no pet.) (mem. op.) ("Unless the claims fall within an express statutory exemption from the scope of Chapter 33, Chapter 33 applies generally to all common-law tort claims and to statutory tort claims . . . ."). A "defendant" in the chapter is any party (like appellant) from "whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages." *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.011(2). A "settling person" is someone "who

11

has, at any time, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the . . . harm for which recovery of damages is sought." *Id.* § 33.011(5).

Chapter 33 applies to this case because appellee sued appellant for negligence (a tort) and the jury found appellant (the defendant) responsible for all of the harm to appellee. *See id.* § 33.002(a)(1); *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704 (Tex. 2008) (stating that chapter 33 covers negligence claims); *Underwriters at Lloyds*, 2008 WL 5441225, at *3; *see also Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 920, 926 (Tex. 1998) (applying chapter 33 when the jury found one defendant liable for compensatory and punitive damages after other defendants had settled before trial); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 571 (Tex. App.—Austin 2008, pet. denied) (concluding that chapter 33 applied because the plaintiff's negligent misrepresentation cause of action was based in tort and the defendant was found wholly responsible for the plaintiff's harm).

Under section 33.012, when a claimant settles with one or more persons, the trial court "*shall . . . reduce* the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b) (emphasis added). Section 33.012 contemplates that a credit should be given when a plaintiff has benefited from a settlement that covers the same harm from which the plaintiff seeks recovery against a nonsettling defendant. *Galle, Inc.*, 262 S.W.3d at 571; *see also Ellender*, 968 S.W.2d at 926 ("When there is a settlement covering

12

some or all of the damages awarded in the judgment, section 33.012 requires the trial court to reduce the judgment accordingly.").

The supreme court has outlined a burden-shifting framework for determining a nonsettling defendant's entitlement to a settlement credit under chapter 33. *See Ellender*, 968 S.W.2d at 926–29. The defendant that seeks the credit must prove the settlement's amount by placing "some evidence of the settlement amount in the record." *Id.* at 927 (holding that a defendant met this burden because the plaintiffs' attorneys had announced the settlement to the trial court, the defendant's motion for judgment had mentioned the settlement amount, and the plaintiffs had not contested the amount). Once the defendant meets its burden to prove the settlement's amount, the plaintiff has the burden to show that it will not receive a double recovery from the settlement and a judgment against the nonsettling defendant. *Id.* at 928. The plaintiff must meet this burden by offering into evidence a written settlement agreement allocating damages to each cause of action; the plaintiff cannot rely on evidence that is extrinsic to the settlement agreement. *Id.* at 928–29; *see Genie Indus., Inc. v. Matak*, No. 13-11-00050-CV, 2012 WL 6061779, at *10 (Tex. App.—Corpus Christi Dec. 6, 2012, pet. granted) (mem. op.) ("*Ellender* instructs us to look solely at the terms expressly stated in a settling party's settlement agreement and ignore extrinsic evidence to determine the allocation of damages for settlement agreements."); *Goose Creek*, 74 S.W.3d at 503 ("Goose Creek contends none of the monies received in the settlements was intended to

13

compensate Goose Creek for any problems with the plumbing. All of the evidence to which Goose Creek refers us . . . is extrinsic evidence. Because under *Ellender*, Goose Creek was not entitled to introduce extrinsic evidence, we cannot review this evidence in determining whether the trial court abused its discretion.").

If the plaintiff does not offer a settlement agreement that allocates damages, the "nonsettling party is entitled to a credit equaling the entire settlement amount."[12] *Ellender*, 968 S.W.2d at 928; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 862 (5th Cir. 2010) (stating that under *Ellender*, when a "settling party fail[s] to allocate its settlement, the nonsettling party [is] entitled to a credit equaling the entire settlement amount"). When the settlement-credit amount exceeds the plaintiff's recovery against the nonsettling defendant, the court must enter a take-nothing judgment. *See Galle, Inc.*, 262 S.W.3d at 573; *Goose Creek*, 74 S.W.3d at 504.

Texas courts have repeatedly applied *Ellender*'s burden-shifting framework. In *Ramsey*, we stated,

> A nonsettling defendant has the burden to prove the existence and amount of a settlement credit, and may do so by placing the settlement agreement or some other evidence of the settlement amount in the record. The burden then shifts to the plaintiff to show that all or a portion of this settlement amount should not be credited.

---

[12]If the plaintiff introduces the settlement agreement, the nonsettling defendant may argue that the settlement transaction or allocation was a sham. *Sanchez v. Mica Corp.*, 107 S.W.3d 13, 22 (Tex. App.—San Antonio 2002, pet. granted; judgm't vacated in part w.r.m.).

14

. . . .

> . . . [A] nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable. However, if settlement monies were also paid on claims for which there is no joint and several liability, it is the plaintiff's burden to establish any reduction in a settlement credit by tendering a settlement agreement that allocates the settlement amount between sole and joint liability claims. Otherwise, the nonsettling defendant is entitled to the full credit.

2009 WL 5064539, at *2–3 (footnotes omitted); *see also Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002) ("Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation."); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 392 (Tex. 2000) (op. on reh'g) (applying *Ellender*); *Valley Grande Manor v. Paredes*, No. 13-11-00752-CV, 2013 WL 3517806, at *2 (Tex. App.—Corpus Christi July 11, 2013, pet. denied) (mem. op.) ("Once the defendant demonstrates its right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation."); *Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("If the nonsettling party meets [the burden to prove a settlement amount], the burden shifts to the plaintiff to tender a valid settlement agreement allocating the settlement between (1) damages for which the settling and nonsettling defendant are jointly liable, and (2) damages for which only the settling party was liable. If the plaintiff cannot satisfy this burden, then the nonsettling party is entitled to a

15

credit equaling the entire settlement amount." (citation omitted)); *Goose Creek*, 74 S.W.3d at 504 ("*Ellender* provided that although the defendant is only entitled to credit for . . . common damages, the defendant should not be disadvantaged by being unable to prove such allocation. . . . [I]f the plaintiff fails to meet [the burden to show separate damages], the defendant will receive a credit for the entire amount of the settlement . . . .").

Applying section 33.012(b) and *Ellender*, we must conclude that the trial court abused its discretion by refusing to apply a settlement credit. Appellant met its burden to present evidence of the amount of the settlement between appellee and Liberty Mutual. *See Ellender*, 968 S.W.2d at 927. The parties' stipulation, entered into the record as the trial court's exhibit 2, establishes that appellee settled with Liberty Mutual for $600,000 and that as a result of the settlement, appellee dismissed her state-court claims against the original defendants. Appellant also informed the trial court about the existence and amount of the settlement on other occasions without contradiction by appellee. Because appellant met its burden, the burden shifted to appellee to show, by presenting the settlement agreement, that she would not receive a double recovery from the settlement and a judgment against appellant (or stated differently, that her damages recited in the settlement and the judgment were separate and not common). *See id.* at 928–29. She did not do so; the record does not contain the settlement agreement or establish that it was presented to the trial judge

16

following appellant's presentation of evidence concerning the settlement.[13] Thus, appellant was entitled to a credit of the entire settlement amount. *See id.* at 928; *Ramsey*, 2009 WL 5064539, at *2–3.

Without citing any part of chapter 33 or *Ellender*, appellee offers several arguments concerning why a settlement credit should not apply. First, she contends that appellant's request for a settlement credit was an affirmative defense, that rule of civil procedure 94[14] therefore required appellant to plead for a settlement credit in its answer, and that appellant failed to do so. But the

---

[13]Appellee appears to contend that the settlement agreement was confidential and that some "items" were tendered to the trial court in camera. But we have not located any part of the record establishing that the settlement agreement was before the trial court, in camera or otherwise, at the time that appellant introduced evidence of the settlement and formally requested a settlement credit. In fact, during the hearing on appellant's motion for new trial, the trial judge indicated that she had not seen the settlement agreement. She remarked,

> [W]ouldn't it be nice to have the settlement agreement out there, so it would be clear and we could all know exactly what it is? . . . I think that the Court was at a very unfair [dis]advantage, *because the settlement agreement was never placed before it.*
>
> . . . .
>
> . . . I believe the answer [to the settlement-credit issue] is contained within that settlement agreement that nobody wants me to see. [Emphasis added.]

[14]"In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Tex. R. Civ. P. 94.

17

application of the settlement-credit statute in *Ellender* indicates that appellant was not required to plead for a settlement credit.

Ellender, the plaintiff, contended to the Beaumont Court of Appeals that rule of civil procedure 45 required Mobil, the defendant, to plead for a settlement credit in its answer.[15] *Mobil Oil Corp. v. Ellender*, 934 S.W.2d 439, 465 (Tex. App.—Beaumont 1996), *aff'd in part, rev'd in part*, 968 S.W.2d at 929. The court of appeals rejected Ellender's argument, explaining that chapter 33 was "silent" concerning whether a pleading was required and noting that Mobil had adequately informed the trial court through other means about its request for a credit.[16] *Ellender*, 934 S.W.2d at 465–66. The court of appeals stated that despite the lack of a request for a settlement credit in Mobil's answer, "the trial court, being aware of the settlement and its amount, was required to comply with section 33.012(b)." *Id.* at 466.

The supreme court did not disturb or question this holding, but instead analyzed Mobil's request for a settlement credit on its merits. *Ellender*, 968 S.W.2d at 926–29. In doing so, the supreme court held that a defendant "seeking a settlement credit has the burden of proving its right to such a credit,"

---

[15]Rule 45 states that pleadings shall "be by petition and answer" and shall "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." Tex. R. Civ. P. 45.

[16]Similarly, as explained above, appellant informed the trial court several times before and during trial that it was seeking a settlement credit.

18

but the supreme court did not state that the defendant has the burden to plead for a credit in its answer. *See id.* at 927.

Furthermore, we conclude that relative provisions within chapter 33 indicate that a defendant need not plead for a settlement credit in its answer. While chapter 33 does not expressly require a nonsettling defendant to plead for a settlement credit and places the impetus upon the trial court to apply the credit, the chapter particularly requires a defendant who seeks to designate a responsible third party for a plaintiff's injuries to plead facts in support of the request and to file a motion sixty days before trial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a), (g) (West Supp. 2013); *cf. id.* § 33.012(b) ("[T]he court *shall further reduce* the amount of damages . . . by the sum of the dollar amounts of all settlements." (emphasis added)).[17]

Next, we note section 33.012(b) "upholds" the common-law's one-satisfaction rule. *See Utts*, 81 S.W.3d at 832; *see also Uzoh v. Ikeakor*, No. 07-01-00318-CV, 2002 WL 31165088, at *4 (Tex. App.—Amarillo Sept. 30, 2002, no pet.) (not designated for publication) ("Section 33.012 . . . gives effect to [the one-satisfaction rule] by requiring that each claimant's award be reduced by the amount for which he or she settles."). The one-satisfaction rule need not be pled

---

[17]In other circumstances, courts have held that the use of mandatory language in a statute dispenses with the need of a party to plead the benefit of the statute. *See, e.g.*, *Robinson v. Brannon*, 313 S.W.3d 860, 868–69 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that no pleading was required for an award of attorney's fees that was mandated by statute).

19

as an affirmative defense. *See Nat'l City Bank of Indiana v. Ortiz*, 401 S.W.3d 867, 888 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g); *Tristan v. C.A. Walker, Inc.*, No. 13-01-00410-CV, 2003 WL 21212342, at *1 n.3 (Tex. App.—Corpus Christi May 27, 2003, pet. denied) (mem. op.).

Finally, one purpose underlying rule of civil procedure 94 is to give a plaintiff notice of what character of proof it may need to meet pleaded defenses. *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 n.8 (Tex.) (op. on reh'g), *cert. denied*, 502 U.S. 824 (1991). But this purpose would not be substantially furthered by requiring a defendant to plead for a settlement credit in its answer. Under *Ellender*, only the settlement agreement itself, to which the plaintiff will always have knowledge of and ready access, can satisfy the plaintiff's burden to avoid the application of a settlement credit once the defendant meets its burden to prove the existence and amount of a settlement. 968 S.W.2d at 927–29.

For all of these reasons, we conclude that the trial court's duty to apply the "mandatory" settlement credit under section 33.012(b) was not predicated on appellant's pleading for a credit in its answer. *See Ramsey*, 2009 WL 5064539, at *2.

Appellee also contends that appellant should have submitted evidence relating to its request for a settlement credit to the jury and that jury findings on the settlement-credit issue were required. Relying on rule of appellate procedure 33.1, appellee argues that appellant's failure to submit the stipulation about the settlement agreement to the jury was fatal to any post-trial attempt to get a credit.

20

*See* Tex. R. App. P. 33.1 (reciting requirements of preservation of error for argument on appeal).

Neither section 33.012 nor precedent required appellant to litigate the settlement-credit issue before the jury. Instead, section 33.012(b) requires "the court" to reduce damages when applying settlement credits. Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b). And in *Utts*, the supreme court explained that a nonsettling defendant should raise a settlement-credit issue "to the trial court[,] not the jury." 81 S.W.3d at 829 (stating also that the nonsettling defendant may urge its settlement-credit motion after the jury has returned its verdict because "the trial court, not the jury, determines how a settlement credit applies . . . when it determines the judgment to render based on the jury's verdict"); *see also Polk v. St. Angelo*, No. 03-01-00356-CV, 2002 WL 1070550, at *4 (Tex. App.—Austin May 31, 2002, pets. denied) (not designated for publication) ("Computation of settlement credits to be offset against a jury verdict is a matter for the trial court, not the jury.").

Next, appellee argues that there is "no way to make any argument that anything was settled by and between [appellee] and any other party that would relate to the claims made, and tried, by [appellee] against [appellant], or would relate to the damages awarded by the jury in this case." Appellee argues that there is no connection between "(1) issues that were tried and found by the jury in the instant case at the state trial court, and (2) the other federal court proceedings which were resolved in a settlement situation that did not have any

21

impact . . . upon [appellant] or its liability."  Appellee asserts that the parties'
stipulation "simply shows that in a separate case, pending in a federal . . . court,
in which [appellant] was not a party, [appellee] made a settlement with an
insurance company . . . of contractual claims for purposes of obtaining means to
repair structural damage to her home . . . ."  Finally, appellee contends that a
"defendant seeking credit or offset must prove not only a settlement amount, but
that it was in fact the settlement of the very same claim."

These arguments are precluded by the authority discussed above.  Once
appellant presented evidence of the amount of appellee's settlement that
resulted in the dismissal of claims against the original defendants in the trial
court, appellee was required to tender the settlement agreement to establish that
the settled claims were separate from the remaining claims.  *See Utts*, 81 S.W.3d
at 828; *Ellender*, 968 S.W.2d at 927–28; *Goose Creek*, 74 S.W.3d at 501; *see
also Galle, Inc.*, 262 S.W.3d at 573 ("Although it is theoretically possible that
some of the damages the Pools sought to recover . . . may have been
separate . . . , *it was the Pools' burden* to offer evidence allocating the settlement
between actual damages for which only Allstate was liable and those for which
Allstate and Galle were jointly liable, in order to limit the credit to the former."
(emphasis added)).  Although appellee refers us to evidence presented at trial in
an effort to show that the settled and tried claims were separate, we cannot
consider the evidence because it is extrinsic to the settlement agreement.  *See
Ellender*, 968 S.W.2d at 929 (limiting plaintiffs' ability to prove allocation to that

22

which is "expressly stated in a valid settlement agreement"); *Goose Creek*, 74 S.W.3d at 503. Moreover, contrary to appellee's arguments, as explained in our recitation of the facts above, the record confirms that some of the settled and tried claims, as pled, overlapped to the extent that the claims commonly sought damages related to appellee's personal possessions.

Appellee also contends that appellant "should not be permitted to proceed at all" in this appeal because it "failed to bring forth a complete record" and thus violated rule of appellate procedure 34.6(c). Appellee argues that appellant presented only a partial reporter's record and failed to file a statement of the points that it intended to bring on appeal. As a result, appellee argues that she is "entitled to the presumption that the omitted portions of the record in this case are relevant . . . and support the judgment rendered by the trial court." In response, appellant contends that it requested a full reporter's record, including pretrial motions, the trial, and the hearing on its motion for new trial.

Rule 34.6(c) states that if an appellant requests "a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." Tex. R. App. P. 34.6(c)(1); *see Bishop v. A.B. Auto Salvage*, No. 02-09-00314-CV, 2011 WL 5984527, at *2 (Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op.) (explaining that when the "reporter's record is *necessary to the appeal* and the appellant requests only a partial record but never submits a statement of points

23

or issues, we must presume that the omitted portion of the record supports the trial court's judgment" (emphasis added) (footnote omitted)).

In September 2012, appellant's counsel sent a letter to the court reporter, asking for a record of the trial that occurred from April 16 to 20, 2012 and the motion for new trial hearing that occurred on August 17, 2012. Appellee contends that this record, comprising nine volumes filed in this court, is "partial" because it does not include "most of the pre-trial hearings." But to support this contention, appellee refers us only to the trial court's docket sheet.[18]

For two reasons, we cannot conclude that the docket sheet creates a presumption that omitted portions of the reporter's record support the trial court's judgment. First, we have explained that docket sheets are inherently unreliable and that we will not examine them on appeal for reasons unrelated to clarifying clerical errors. *Guyot v. Guyot*, 3 S.W.3d 243, 247 n.2 (Tex. App.—Fort Worth 1999, no pet.); *see also In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) ("A docket-sheet entry ordinarily forms no part of the record that may be considered; rather, it is a memorandum made for the trial court and clerk's convenience.").

Second, even if we were to consider the docket sheet for substantive purposes, it does not establish that any recorded pretrial hearing that has not

---

[18]The clerk's record, including supplements, comprises over 3,000 pages. We will not search the clerk's record for indications that there were recorded pretrial hearings that are not in the reporter's record on appeal.

24

been made a part of our record was evidentiary in nature or in any way concerned the narrow issue of whether appellant is entitled to a settlement credit.[19] We decline to apply the presumption under such circumstances. *See* Tex. R. App. P. 34.1 (stating that the appellate record consists of the clerk's record and, "*if necessary to the appeal*, the reporter's record" (emphasis added)); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 40 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (op. on reh'g) ("We are not aware of any cases . . . applying the common law presumption . . . when the only omission from the record is nonevidentiary. To the contrary, other courts have refused to apply the . . . presumption when a party failed to comply with Rule 34.6(c) but omitted a nonevidentiary portion of the reporter's record." (footnote omitted)); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005) ("What is clear is that a reporter's record is required only if evidence is introduced in open court; for nonevidentiary hearings, it is superfluous."); *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002) (explaining that the rules of appellate procedure are intended to "further the resolution of appeals on the merits");

---

[19]We note that appellee did not seek to supplement the reporter's record during the three months between when appellant filed its brief (raising only the settlement-credit issue) and appellee filed her brief. *Cf. Brawley v. Huddleston*, No. 02-11-00358-CV, 2012 WL 6049013, at *2 (Tex. App.—Fort Worth Dec. 6, 2012, no pet.) (mem. op.) (declining to apply the presumption that non-designated parts of the reporter's record supported the trial court's judgment because several months elapsed between the filing of the parties' briefs, and the appellee therefore "had an opportunity to request that the reporter's record be supplemented with additional trial court proceedings" that were relevant to the issues raised by the appellant).

*Jones v. Warren*, No. 02-12-00154-CV, 2013 WL 4679731, at *2 (Tex. App.—Fort Worth Aug. 29, 2013, no pet.) (mem. op.) (applying the presumption when the appellant's argument depended on the court's review of evidence and the appellate record did not contain the evidence).

Next, appellee contends that appellant "invited error" by asking for the original defendants to be included in the jury charge and that the jury's finding that appellant was completely responsible for the harm to appellee precludes the application of a settlement credit. The invited error doctrine prevents a party from asking for relief from the trial court and later complaining on appeal that the trial court gave it. *Yaquinto v. Britt*, 188 S.W.3d 819, 829 (Tex. App.—Fort Worth 2006, pet. denied). But appellant does not complain about the language in the jury charge or the jury's finding that it was completely liable for the harm caused to appellee. Thus, the cases cited by appellee relating to invited error are inapposite. *See, e.g.*, *Mora v. Chacon*, No. 13-05-00182-CV, 2005 WL 2562616, at *7 (Tex. App.—Corpus Christi Oct. 13, 2005, pet. denied) (mem. op.) (applying the doctrine of invited error when appellants asked a trial court to disregard a jury's answer and later complained about the court's doing so).

More importantly, the jury's finding under section 33.003 of the civil practice and remedies code that appellant was wholly responsible for appellee's injuries does not preclude the application of a settlement credit that relates to the same injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.003(a), .012(b) (stating that after reducing damages based on percentages of responsibility, the

court "shall further reduce" the plaintiff's recovery by settlement credits); *Ellender*, 968 S.W.2d at 920, 926 (applying chapter 33's settlement-credit principles when the jury found one defendant liable for compensatory and punitive damages after other defendants had settled before trial); *Galle, Inc.*, 262 S.W.3d at 571 (holding similarly when the nonsettling defendant was found "wholly responsible"); *see also Roberts v. Williamson*, 111 S.W.3d 113, 123 (Tex. 2003) ("The 'amount of damages to be recovered by the claimant' under section 33.012 must be reduced by . . . proportionate responsibility *and* by settlements." (emphasis added)); *Smith v. Cudd Pressure Control Inc.*, 126 S.W.3d 106, 110–11 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (demonstrating that chapter 33's proportionate responsibility and settlement-credit principles must be separately applied).

Appellee also argues that the statement of facts in appellant's brief violates rule of appellate procedure 38.1 because it is not properly supported by record references. *See* Tex. R. App. P. 38.1(g). We have reviewed appellant's statement of facts, which is properly supported by record references. We overrule appellee's argument to the contrary.

Finally, appellee argues that the parties' stipulation—the trial court's exhibit 2—was improperly admitted over her objections. "A trial court's rulings in admitting or excluding evidence are reviewable under an abuse of discretion standard. An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling." *Farlow v. Harris*

27

*Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 927 (Tex. App.—Fort Worth 2009, pet. denied) (citation omitted).

On appeal, appellee contends that the trial court should not have admitted the exhibit because appellant had not pled for a settlement credit; appellant had failed to "make proof to the jury" concerning the settlement credit; and the exhibit was irrelevant, violating rule of evidence 401. *See* Tex. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."), 402 ("Evidence which is not relevant is inadmissible.").

We have already addressed and rejected appellee's arguments regarding pleading of the settlement credit and proof of the settlement agreement to the jury. Appellee's argument concerning relevance appears to be connected with her argument concerning pleading. She contends, "[T]here was an objection on the ground of relevance because the proposed 'evidence' was not properly relevant to any issue properly pleaded, or for which there was a proper pleading predicate in the case." To the extent that appellee argues that the stipulation was not relevant simply because appellant did not plead for a settlement credit, we overrule the argument for the reasons explained above. Finally, if appellee's argument can be broadly construed to challenge the exhibit's relevance generally, we conclude that the trial court did not abuse its discretion by admitting the exhibit because the existence and amount of appellee's settlement with the

original defendants was a fact "of consequence" in this case. *See* Tex. R. Evid. 401; *Ellender*, 968 S.W.2d at 927 (stating that the nonsettling defendant has the burden to place "some evidence of the settlement amount in the record"); *Farlow*, 284 S.W.3d at 927.

## Conclusion

For all of these reasons, we hold and conclude that under the circumstances presented here, the trial court abused its discretion by not applying a $600,000 settlement credit under chapter 33 of the civil practice and remedies code. We sustain appellant's sole issue and overrule all of appellee's cross-points and reply points. Because the settlement credit exceeds the amount that the trial court awarded to appellee in its judgment ($163,080), we reverse the trial court's judgment and render a take-nothing judgment for appellant.[20] *See Bus. Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 752 (Tex. App.— San Antonio 2012, no pet.); *Galle, Inc.*, 262 S.W.3d at 573.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED: May 15, 2014

---

[20]We deny appellee's motion "Complaining of Misconduct of Appellant in the Form of a Totally Frivolous Appeal."